UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| JOHN RAY, <br> AMY RAY, | ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | 4:13-cv-00114-SEB-WGH |
| vs. | ) <br> ) | |
| NELSON & FRANKENBERGER, P.C., | ) <br> ) | |
| Defendant. | ) | |

## ORDER ON PENDING MOTIONS

This cause is before the Court on three motions: Defendant's motion for partial judgment on the pleadings [Docket No. 14], Plaintiff's motion for leave to file a sur-reply in opposition to the motion for judgment on the pleadings [Docket No. 24], and Plaintiff's motion for leave to file a second amended complaint [Docket No. 25]. Plaintiff's motion for leave to file a sur-reply is GRANTED, and the brief attached to their motion is deemed filed as of January 15, 2014. For the reasons set forth below, Defendant's motion for partial judgment on the pleadings is GRANTED, and Plaintiff's motion for leave to file an amended complaint is also GRANTED.

## Factual and Procedural Background

Because Defendant has moved to dismiss only a portion of Plaintiffs' complaint, we present only those facts necessary to provide context for the portion of the complaint at issue. Plaintiffs John and Amy Ray are a married couple residing in Jefferson County, Indiana. Am. Compl. ¶ 1. On November 10, 2004, the Rays contracted with Ray Cavett[1] to purchase real estate located at 125 Montclair Street in Madison, Indiana. The property consisted of two lots: a small

---

[1] Defendant spells the name "Cavette" in its submissions, but it appears from the record documents attached by Plaintiff—such as the warranty deed, Pls.' Ex. 2—that "Cavett" is the correct spelling.

unimproved parcel measuring 10 feet by 150 feet, and a larger parcel containing a house in which the Rays intended to live. Am. Compl ¶ 3. The contract contained a description only of the smaller unimproved lot, and did not mention the larger lot. *Id.* at ¶ 4. The same day, Cavett executed a warranty deed in favor of the Rays and placed it in escrow, to be delivered to the Rays on payment of the contract price. Like the contract, the warranty deed described and purported to convey only the unimproved lot. *Id.* at ¶ 6.

In March 2006, the Rays obtained financing to effectuate their purchase of the property, granting a mortgage to Homecomings Financial Network, Inc. ("Homecomings") to secure a promissory note. The appendix to the mortgage described only the unimproved lot. *Id.* at ¶¶ 5–7. The Rays recorded the warranty deed on April 4, 2006, and Homecomings recorded the March 2006 mortgage on April 10, 2006. Pl.'s Resp. 6. According to both the Rays and Defendant, the omission of the larger improved lot from the purchase contract, warranty deed, and mortgage was unintentional. *See* Pl.'s Resp 4; Def.'s Br. 3. The Rays lived in the house on the improved parcel and maintained both lots for several years as neighbors to the original owner Cavett, until Cavett's death in 2009. Pl.'s Resp. 4, ¶ 2.

After Cavett's death, his estate discovered the omission of the improved portion of the property at 125 Montclair from the original 2004 warranty deed. In order to rectify the error, the estate prepared a "personal representative's deed" on March 25, 2011 conveying the parcel to the Rays. Am. Compl. ¶ 9. The Rays recorded this deed on April 14, 2011.

On September 14, 2011, a representative of the mortgage assignee, Wells Fargo Bank, sent the Rays a letter informing them that they were in default on their mortgage.[2] Pl.'s Resp. 7,

---

[2] According to Plaintiffs' narrative of the facts, Wells Fargo did not actually acquire the mortgage from Homecomings until July 2012, meaning that when it sent the Rays the September 2011 it was not actually the noteholder. *See* Pl.'s Resp. 10–11.

¶ 12. Subsequent communications with the Rays made them aware that their original 2006 mortgage described only the unimproved lot.[3] In early 2012, Defendant Nelson & Frankenberger, P.C. ("N&F"), Wells Fargo's counsel, modified the 2006 mortgage so that it included both the improved and unimproved lots at 125 Montclair. Am. Compl. ¶ 11; Pl.'s Resp. 10. According to Plaintiffs, N&F did not inform the Rays of this modification, and it recorded the altered mortgage on Wells Fargo's behalf on May 25, 2012. Pl.'s Resp. 10, ¶ 18. Wells Fargo, by counsel N&F, then brought a foreclosure action against the Rays in Jefferson County Superior Court on July 20, 2012. Am. Compl. ¶ 14. The Rays contend that this foreclosure complaint, prepared by N&F, contained a number of misrepresentations and untruths. *See* Am. Compl. ¶¶ 15–20.

Alleging that N&F's communications with them in connection with the foreclosure action qualified as "attempts to collect a debt" and that N&F thus violated the federal Fair Debt Collection Practices Act ("FDCPA"), the Rays filed a complaint against N&F in Jefferson County Circuit court on July 11, 2013. Am. Compl. ¶ 24. N&F removed the action to this Court shortly thereafter.

On September 11, 2013, Andrew Hull of Hoover Hull LLP, defense counsel for N&F in this FDCPA action, sent the Rays' counsel a letter requesting that they voluntarily dismiss their FDCPA complaint; the letter informed the Rays' counsel that if the complaint was not dismissed, he intended to move for summary judgment and the recovery of attorneys' fees under Rule 11 and the federal and Indiana attorneys' fees statutes. Am. Compl. ¶¶ 25–27. The letter summarized the opinion of N&F and counsel that the facts "demonstrate the lack of legal merit

---

[3] The parties dispute whether Plaintiffs, through these communications, acquiesced in the modification of the mortgage to correct this error. That dispute, while it may be important to the FDCPA complaint itself, is not implicated by this partial motion to dismiss.

to the Rays' claims in this action." Def.'s Ex. 2 at 4. It then concluded: "We look forward to your clients' response on or before Monday, September 23, 2013. Following that date, we plan to prepare motions for summary judgment and for the recovery of all attorneys' fees and expenses." *Id.*[4]

Six days later, on September 17, 2013, Plaintiffs amended their complaint in the present action to add seven paragraphs of allegations relating to the September 11 letter from N&F's defense counsel. *See* Docket No. 9; Am. Compl. ¶¶ 25–31. Defendant's pending motion seeks the dismissal of these additional allegations, and does not address the contents of the original complaint.

After September 11, 2013, N&F and its counsel continued to communicate with the Rays and their counsel—both in connection with the state court foreclosure suit initiated by Wells Fargo and in connection with the Rays' own FDCPA suit against N&F in this Court. However, N&F withdrew as Wells Fargo's lead counsel in the foreclosure action—and designated "debt collector"—on December 9, 2013, and it did not have further communications with the Rays regarding the foreclosure after that date. On January 15, 2014, Plaintiffs filed the pending motion for leave to amend complaint; in it, they seek to supplement their FDCPA claim with allegations that N&F continued to engage in impermissible communications in the period between the September 11, 2013 letter and its withdrawal as Wells Fargo's counsel on December 9, 2013. The proposed second amended complaint summarizes these new allegations as follows:

> Following July 20, 2012 and through December 9, 2013, Nelson & Frankenberger continued to act as a debt collector in the state court foreclosure debt collection action it filed against the Rays on behalf of Wells Fargo Bank. Following the filing of its answer to the complaint in federal court and while continuing to act as a debt collector in connection with the collection of a debt against the Rays in state court, Nelson and Frankenberger initiated a litigation strategy on September

---
[4] We may consider this document part of the pleadings, as it was attached to Defendant's motion to dismiss and Plaintiffs' complaint repeatedly referred to it. *See 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002).

11, 2013 which involved threatening to seek attorney's fees and expense [sic] against the Rays if the Rays did not immediately forego [sic] the exercise of their federally protected right to redress violations of the FDCPA, did not relinquish their defenses and counterclaim in the foreclosure debt collection action, did not surrender a portion of their real property and did not sign a decree foreclosure. These threats were conveyed in writing to the Rays on September 11, 2013, October 3, 2013, October 4, 2013, October 9, 2013, and December 4, 2013.

Docket No. 25, Ex 1. at ¶ 25.

## Legal Analysis

### Standard of Review

**Motion for Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment after the pleadings are closed, but early enough not to delay trial; we review motions for judgment on the pleadings under the same standard by which we review motions to dismiss for failure to state a claim under Rule 12(b)(6). *Buchanan-Moore v. County of Milwaukee,* 570 F.3d 824, 827 (7th Cir. 2009); *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).

In determining the sufficiency of a claim under this standard, the court considers all allegations in the complaint to be true and draws such reasonable inferences as required in the plaintiff's favor. *Jacobs v. City of Chi.,* 215 F.3d 758, 765 (7th Cir. 2000). Federal Rules of Civil Procedure 8(a) applies, with several enumerated exceptions, to all civil claims, and it establishes a liberal pleading regime in which a plaintiff must provide only a "short and plain statement of the claim showing that [he] is entitled to relief," Fed. R. Civ. Pro. 8(a)(2); this reflects the modern policy judgment that claims should be "determined on their merits rather than through missteps in pleading." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 779 (7th Cir. 2007) (citing 2 James W. Moore, et al., *Moore's Federal Practice* § 8.04 (3d ed. 2006)). A pleading satisfies the core requirement of fairness to the defendant so long as it provides "enough

5

detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

In its decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court introduced a more stringent formulation of the pleading requirements under Rule 8. In addition to providing fair notice to a defendant, the Court clarified that a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility requires more than labels and conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (quoting *Twombly,* 550 U.S. at 555). Instead, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. The plausibility of a complaint depends upon the context in which the allegations are situated, and turns on more than the pleadings' level of factual specificity; the same factually sparse pleading could be fantastic and unrealistic in one setting and entirely plausible in another. See In re Pressure Sensitive Labelstock Antitrust Litig., 566 F. Supp. 2d 363, 370 (M.D. Pa. 2008).

Although *Twombly* and *Iqbal* represent a new gloss on the standards governing the sufficiency of pleadings, they do not overturn the fundamental principle of liberality embodied in Rule 8. As this Court has noted, "notice pleading is still all that is required, and 'a plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.'" *United States v. City of Evansville*, 2011 WL 52467, at *1 (S.D. Ind. Jan. 8, 2011) (quoting *Tamayo*, 526 F.3d at 1083). On a motion to

dismiss, "the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994).

**Motion for Leave to Amend Complaint**

Plaintiffs in federal court are entitled to amend their complaint once as a matter of course, if they do so in a timely fashion. Fed. R. Civ. Pro. 15(a)(1). Here, Plaintiffs seek to amend their complaint for a second time, which they may do only with the leave of the Court. The Federal Rules instruct that we should "freely give leave when justice so requires." Fed. R. Civ. Pro. 15(a)(2). However, we may deny leave to amend in the case of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC,* 499 F.3d 663, 666 (7th Cir. 2007) (citations omitted); *see also Adams v. City of Indianapolis,* 2011 WL 1752105, at *2 (S.D. Ind. May 6, 2011). A proposed amendment is futile if "the complaint, as amended, would fail to state a claim upon which relief could be granted"—in other words, if it would be subject to dismissal under Rule 12(b)(6). *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997).

## Discussion

Because our resolution of Defendant's partial motion for judgment on the pleadings largely controls the viability of Plaintiffs' motion for leave to amend their complaint, we address Defendant's motion first.

**I.     Defendant's partial motion for judgment on the pleadings**

7

Defendant's motion seeks the dismissal only of the seven paragraphs of allegations (¶¶ 25–31) that Plaintiffs added to their FDCPA claim when they filed their amended complaint on September 17, 2013. *See* Docket No. 9. These allegations pertain exclusively to the letter Andrew Hull, N&F's defense counsel in this case, sent to Plaintiffs' attorney on September 11, 2013. *See* Am. Compl. ¶¶ 25–31. Defendant contends that these allegations are subject to dismissal because N&F was not acting as a "debt collector" or "in connection with the collection of a debt" when it sent the letter—and its conduct (or that of its attorney) was therefore outside the scope of the FDCPA.

**A. Legal standard under the FDCPA**

The Fair Debt Collection Practices Act (FDCPA) aims at remedying the use of "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). "Among other things, the FDCPA regulates when and where a debt collector may communicate with a debtor, restricts whom a debt collector may contact regarding a debt, prohibits the use of harassing, oppressive, or abusive measures to collect a debt, and bans the use of false, deceptive, misleading, unfair, or unconscionable means of collecting a debt." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010) (citing 15 U.S.C. §§ 1692, 1692c–1692f). Plaintiffs cannot recover under the FDCPA, however, unless her claim meets a number of statutory prerequisites. Most relevant here, Plaintiffs must show that the defendant is a "debt collector" within the statute's definition, which provides that the term applies to "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

Relatedly, Plaintiffs must show that "the communication by the debt collector that forms the basis of the suit [was] made '*in connection with* the collection of any debt.'" *Gburek,* 614 F.3d at 384 (emphasis added). Thus, it is not enough to show that a defendant acts as a debt collector with respect to the plaintiff generally; Plaintiffs must also show that the communications they challenge under the act constituted, or were related to, attempts to collect the debt. *See McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006) ("The FDCPA applies only to 'debt collectors' whose conduct involves the collection of a debt.").

Determining whether a communication is "in connection with" the collection of a debt requires a flexible, "common sense" inquiry. *Gburek,* 614 F.3d at 385. The first, and most obvious, factor to consider is whether the communication takes the form of a demand for payment. *See Bailey v. Security Nat'l Servicing Corp.*, 154 F.3d 384, 388–389 (7th Cir. 1998). Other important considerations include the nature of the parties' relationship and the "purpose and context of the communications." *See Simpson v. Safeguard Properties, L.L.C.*, 2013 WL 2642143, at *3 (N.D. Ill. June 12, 2013) (citing *Gburek,* 614 F.3d at 385).

In 1986, Congress amended the FDCPA to provide that attorneys engaged in litigation to recover debts on behalf of third parties can qualify as "debt collectors" under the Act, subject to the same prerequisites for liability as non-attorney debt collectors. *See* Publ. L. No. 99–361, 100 Stat. 768 (codified as amended at 15 U.S.C. § 1692a(6)). As the Supreme Court has noted, the FDCPA may now apply to lawyers who regularly "engage in consumer-debt-collection activity, even when that activity consists of litigation." *Heintz v. Jenkins,* 514 U.S. 291, 299 (1995).

**B. Application to the September 11, 2013 letter**

9

Plaintiffs' theory here seems to be a novel one. We are aware of no decisions in this circuit that have entertained the argument that, after a plaintiff has sued a debt collector under the FDCPA, the defendant's communications with the plaintiff regarding that lawsuit can *themselves* be unfair "debt collection" practices. We surmise that the theory is novel because it is so clearly untenable.

The September 11, 2013 letter solely concerns the present FDCPA suit in which N&F is the Defendant. N&F's counsel wrote to Plaintiffs' counsel to assert that the FDCPA claim was groundless, and he warned that he would seek summary judgment and attorneys' fees if Plaintiffs persisted with the suit. Def.'s Ex. 2. The letter contains several paragraphs attempting to refute the allegations that N&F's conduct as Wells Fargo's debt collector in the separate state court foreclosure action were unfair debt practices. While the existence of a mortgage debt can thus certainly be inferred from the subtext of the letter, its author never so much as mentions the mortgage debt or its dollar amount—let alone "demanding" its repayment. *Cf. Shelley v. Ocwen Loan Servicing, LLC*, 2013 WL 4584649, at *5–6 (S.D. Ind. Aug. 28, 2013) (noting that "it is axiomatic that for a demand of money to be made, the recipient of the demand must be informed what amount is owed").

A communication may qualify as "in connection with" an attempt to collect a debt even if it does not explicitly demand repayment. *See Gburek,* 614 F.3d at 385. In several cases in this circuit, courts have held that the larger context of the communication, or the relationship between the parties, can bring a communication under the umbrella of FDCPA. For instance, in *Horkey v. J.V.D.B. & Assocs.*, 333 F.3d 769 (7th Cir. 2003), a debt collector called a debtor at her place of work; when the debtor told him she was unavailable to talk, the debt collector then hung up and called her co-worker, asking him to tell the debtor to "quit being such a [expletive] bitch." 333

F.3d at 772. Although this second call to the co-worker did not explicitly mention an attempt to collect the debt, its context signaled clearly that it was "in connection with" the debt collector's ongoing effort to do so.[5] In *Simpson v. Safeguard Properties, L.L.C.*, 2013 WL 2642143 (N.D. Ill. June 12, 2013), a debt collector attached notes to a debtor's door that did not specifically request repayment, but instructed the debtor to "have her account number ready and call the phone number of the [debt collector's] loan counselors"; the court concluded that the plain purpose of the notes was to encourage the debtor to make contact to "discuss options to settle her purported debt," and it found that the notes thus qualified under the FDCPA. 2013 WL 2642143, at *3. In doing so, it reasoned that the "nature of the relationship between the parties" and the "purpose and context of the communications at issue" both pointed towards an attempt to collect on a debt. *Id.* But in *Shelley v. Ocwen Loan Servicing, LLC,* 2013 WL 4584649 (S.D. Ind. Aug. 28, 2013), this court found that communications announcing a change in loan servicers and announcing due dates for the next payment—along with contact information—were not "in connection with" a debt collection attempt. 2013 WL 4584649, at *5–8. Not only were the letters at issue in *Shelley* not explicit demands for repayment, the court observed—they were also "informational" rather than hectoring when considered in context. *Id.*

The letter sent by N&F's counsel here is not in the same contextual universe as the communications considered above. It is true, of course, that the two parties would not find themselves as adversaries in litigation were it not for N&F's antecedent efforts to collect the mortgage debt on behalf of Wells Fargo. In that sense, the "nature of their relationship" is at its core one between a debt collector and debtor. But their relationship as of September 11—at least

---

[5] The court went on to hold, not surprisingly given its shocking crudeness, that the phone call violated the FDCPA. 333 F.2d at 774.

11

in the context of this letter—stood at a significant remove from those origins. Plaintiffs had sued N&F, and the letter from Defendant's counsel confined itself wholly to the issues relevant to this pending lawsuit. Indeed, according to Plaintiffs' position at the time, N&F's misconduct was already complete; the Rays' payment or non-payment of their mortgage debt might impact the state court foreclosure action, but it could have no effect on the question raised by this FDCPA suit: N&F's alleged misconduct in seeking repayment. Under these circumstances, the result of our "common sense" inquiry is clear: the September 11, 2013 letter was not "in connection with" an attempt to collect the Rays' mortgage debt. *See Gburek,* 614 F.3d at 385.

Plaintiffs object that, though the letter on its face pertains only to the FDCPA suit, it is part of a larger, unified "litigation tactic" aimed at intimidating the Rays into capitulating in both the FDCPA suit and the foreclosure suit that was pending against them in state court. In Plaintiffs' words: "The September 11, 2013 threat of Nelson and Frankenberger to sue the Rays was made to cause the Rays to dismiss their Complaint for violations of the Fair Debt Collection Practices Act so that [N&F] could use the dismissal to enhance its debt collection efforts against the Rays by undermining legal defenses of the Rays in the state court foreclosure action." Am. Compl. ¶ 30.[6] By wielding the threat of attorneys' fees under Rule 11, the Rays contend that N&F intended to intimidate them into conceding their FDCPA suit lacked merit—a concession they feel could hurt their chances in defending themselves against N&F and Wells Fargo in state court.[7]

---

[6] It is worth noting, as Defendant does in its reply brief, that Plaintiffs' characterization of the "threat" contained in the September 11 is exaggerated; the letter did not threaten to "sue" them or demand that they "submit to a foreclosure decree." Def.'s Reply 5–6.

[7] Plaintiffs also devote a considerable portion of their response, including long litanies of case citations, to establishing two propositions: that "litigation activities can be actionable under the FDCPA," and that "communications issued by debt collectors, directly or through others, to counsel for the debtors can be actionable under the FDCPA." Both statements are true enough—and are not disputed by Defendant—but they do not touch on the key issue here. N&F, as a law firm, might well be liable under the FDCPA for its attempts to collect on the

We are not without sympathy for the concern that lies at the heart of this argument. Plaintiffs' counsel repeatedly emphasizes his inexperience with the FDCPA,[8] and we find it credible that he and his clients are susceptible to intimidation by N&F's "hardball" tactics; they well may feel, as the Amended Complaint asserts, "extremely anxious, worrying about financial ruin if they continued to resist NF's client." *Id.* Nevertheless, as Defendant points out, the theory the Rays espouse would not only stretch the FDCPA and Seventh Circuit authority beyond recognition, it would make bad law. *See* Def.'s Reply 6. The Rays chose to sue N&F, opening up a new front in their legal fight against the firm; they and their attorney bear the ultimate responsibility for ensuring that a suit they bring to court is not frivolous, and for having enough confidence in the merits of their claims to withstand any attempts to intimidate them by raising the specter of Rule 11 sanctions. The letter's threat to seek attorneys' fees was within N&F's rights as a defending party, *see, e.g.*, *Connor v. Instant Cash Advance,* 2003 WL 446378, at *2 (S.D. Ind. Feb. 20, 2003). Defense counsel's exhortations to abandon a suit that lacked merit may not have constituted welcome legal advice to Plaintiffs' counsel, but they read as little more than the normal preliminary jostling engaged in by litigators.

Without reaching the underlying merits of Plaintiffs' FDCPA suit or the legality of N&F's conduct as described in the balance of the Amended Complaint, we conclude that the allegations pertaining to the September 11, 2013 letter do not state a claim under the FDCPA and should be dismissed.

---

Rays' mortgage debt (an issue we do not reach in this Order); the fact that they sent a debt collection letter through counsel—or to the Rays' counsel, or both—would not disqualify the communication from scrutiny under the statute. But these issues are immaterial here, for they do not relate to whether the September 11 letter was "in connection with" an attempt to collect a debt.

[8] In fact, counsel refers to himself as a "ham and egger"—apparently a reference to the works of the author John Grisham, and a term denoting small-time practitioners. Am. Compl. 15 n.2.

## II. Motion for Leave to Amend Complaint

Our resolution of the motion for judgment on the pleadings partially predetermines our resolution of Plaintiffs' motion for leave to file a second amended complaint. Plaintiffs seek to amend their complaint to detail five instances in which they allege N&F engaged in communications in violation of the FDCPA. *See* Docket No. 25, Ex. 1 (Proposed Second Amended Complaint) at ¶ 25. Of these, three of the allegations pertain to communications made by N&F's counsel in connection with the defense of this FDCPA suit itself: (1) the September 11, 2013 letter (see above); (2) a letter from N&F's counsel to Plaintiffs' counsel on October 9, 2013 asserting that Plaintiffs' new FDCPA allegations concerning the September 11 letter were groundless, *see* Pl.'s Ex. 46; and (3) a footnote in N&F's December 4, 2013 brief in support of their motion for partial judgment on the pleadings, reiterating that N&F intended to seek summary judgment and attorneys' fees on Plaintiffs' FDCPA claims. *See* Docket No. 28 at 6.[9] For the same reasons that we have discussed above, we conclude that amending the complaint to add these accusations would be futile: the other two communications, like the September 11 letter, concerned only the current suit in which N&F is a defendant, and not N&F's efforts to collect the mortgage debt or the separate state court foreclosure suit. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997).

The other two alleged instances of misconduct to be added to the complaint, apparently, arose in the context of N&F's prosecution of the state court foreclosure action on behalf of Wells Fargo. Plaintiffs' proposed amendments do not specifically describe the communications in question; rather, they allege only that N&F conveyed "threats" in writing to the Rays on October

---

[9] Plaintiffs never specify what document they refer to when citing the "threat" issued by N&F on December 4, 2013, but we accept Defendant's surmise that Plaintiffs are referring to the footnote from the brief submitted December 4, which was the only document appearing on our docket on that date.

3 and October 4, 2013. Docket No. 25, Ex. 1 at ¶ 25. As Defendant notes, there are two communications from October 3, 2013 that Plaintiffs could be referring to: a letter from Mary Slade, N&F's co-counsel in representing Wells Fargo, to Plaintiffs' counsel; or a motion to strike filed in the foreclosure action by Mary Slade on behalf of Wells Fargo. *See* Docket No. 28 at 6.[10] The October 4, 2013 communication was apparently a reply brief filed by N&F in the foreclosure action. *See* Docket No. 16 at 16.

These new allegations about N&F's conduct as Wells Fargo's representative in the debt collection action arise from the same theory of liability Plaintiffs had already put forth in their earlier complaints. Both the initial complaint and the first amended complaint charge that N&F violated the FDCPA by initiating the foreclosure action against the Rays in July 2012. *See* Am. Compl. ¶ 23. Specifically, the Rays claim that N&F's complaint on July 20, 2012 contained at least the following misrepresentations: a mortgage document that had been improperly altered, a notice of default that incorrectly identified the creditor, and incorrect statements about the notice of default that had been sent to the Rays. *Id.* These new accusations assert that as N&F continued to prosecute that lawsuit, it continued to make the same misrepresentations—all in the course of its attempt to collect the debt owed to Wells Fargo by securing a judgment in the bank's favor. The Rays also allege that N&F engaged in litigation tactics—supposedly exemplified by the communications of October 3 and October 4, 2013—that unduly delayed the process or constituted attempts to intimidate the Rays and their counsel. *See* Docket No. 25, Ex.

---

[10] Defendant contends that it could not be held liable under the FDCPA for the communications of its co-counsel. Docket No. 28 at 5. Defendant does not cite any authority in support of this argument, and since it is not entirely clear what communications on October 3 and October 4 Plaintiffs refer to—or who exactly authored them—we will reserve judgment on that question.

15

1 at ¶ 27 ("Nelson and Frankenberger intended to intimidate and frighten the Rays, cause them anxiety and anguish, and . . . undermine their attorney-client relationship.").

As both parties concede, N&F ceased to represent Wells Fargo as lead counsel in the foreclosure action on December 9, 2013. It appears then, that this portion of Plaintiffs' proposed second amended complaint is an attempt to add additional documentation to their theory of N&F's misconduct in representing Wells Fargo in the period that ended on that date. For the sake of efficiency and clarity, we are inclined to allow them to make these additions, since the question of their futility is intertwined with the question of the complaint's legal sufficiency as a whole. In its response to the motion to amend, Defendant protests that Plaintiffs should not be allowed to amend their FDCPA complaint every time anything new happens in either of the two pending suits. Docket No. 28 at 1.[11] We agree in principle, but we do not think granting leave here opens the prospect of unlimited, dilatory amendments. Plaintiffs have intimated that, since N&F ceased to serve as Wells Fargo's lead counsel on December 9, 2013, their new allegations—spanning the period between September and December 2013—close the book on any FDCPA violations N&F may have committed. *See* Docket No. 29 at 2–3. Assuming that this is, in fact, the final set of new allegations, we perceive no harm to Defendant in allowing the amendment. No dispositive motions have yet been filed, and the amendment contravenes no case management plan. Whether groundless as a matter of law or not, Plaintiffs' accusations

---

[11] Defendant also objects to inclusion of accusations relating to the October 3 and October 4 communications on the grounds that "[n]ew communications about old claims do not constitute violations of the FDCPA . . . . Further, maintaining a lawsuit is not, in itself, a continuing violation of the FDCPA." Docket No. 28 at 5 (quoting *Bihn v. Fifth Third Mortg. Co.,* 2013 WL 5657598, at *4 (S.D. Ohio Oct. 16, 2013)). Defendant cites a number of district court cases from the Sixth and Third Circuits in support of this proposition. *Bihn v. Fifth Third Mortg. Co.*, 2013 WL 5657598 (S.D. Ohio Oct. 16, 2013), the reference on which Defendant principally relies, does not directly apply to the facts of this case. There, the court was addressing the statute of limitations, and it noted that "the alleged conduct must independently violate the FDCPA." 2013 WL 5657598 at *4. We offer no opinion on the question of whether N&F's conduct in prosecuting the foreclosure action violated the FDCPA, but Plaintiffs' proposed amendments appear to allege that it did, and that is sufficient at this stage. Defendant has not raised the statute of limitations here.

regarding N&F's conduct as Wells Fargo's debt collector can be addressed when the parties present us with dispositive motions.

We therefore GRANT Plaintiff's motion for leave to amend their complaint, but with the caveat that new factual allegations pertaining to N&F's conduct in defense of the present FDCPA suit, if they are included in an amended complaint, will be stricken in accordance with our disposition of Defendant's motion for partial judgment on the pleadings.

## **Conclusion**

We have resolved the three motions pending before us as follows:

1. Plaintiffs' motion for leave to file a sur-reply in opposition to the motion for judgment on the pleadings [Docket No. 24] is GRANTED.
2. Defendant's motion for partial judgment on the pleadings is GRANTED, and the allegations raised in paragraphs 25–31 of the first amended complaint—pertaining to the September 11, 2013 letter sent by Defendant's counsel—are DISMISSED with prejudice.
3. Plaintiffs' motion for leave to file a second amended complaint is GRANTED, subject to the restrictions imposed by our ruling on the motion for partial judgment on the pleadings, as discussed above.

IT IS SO ORDERED.

Date: 9/3/2014

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Joseph A. Colussi
COLUSSI LAW OFFICE
colussilaw@msn.com

Andrew W. Hull
HOOVER HULL LLP
awhull@hooverhull.com

Michael A. Dorelli
HOOVER HULL LLP
mdorelli@hooverhull.com